UNITED STATES (MONTELL v.). See Case No. 9,723.

---

## Case No. 15,799.

UNITED STATES v. MONTGOMERY.

[2 Dall. 335.] [1]

Circuit Court, D. Pennsylvania. 1795.

ATTACHMENT—BY WHOM TO BE SERVED.

An attachment being awarded against the witnesses, who did not attend at the return of

[1] [Reported by A. J. Dallas, Esq.]

---

## Case No. 15,800.

UNITED STATES v. MONTGOMERY.

[3 Sawy. 544.] [1]

District Court, D. Oregon. Dec. 28, 1875.

RECEIVING PROPERTY STOLEN FROM MAIL — POSSESSION—INDICTMENT—WITNESSES—CONFESSIONS.

1. An indictment under section 5479 of the Revised Statutes, which charges the defendant with receiving, concealing, and aiding in the concealing, of gold dust stolen from the mails, only charges one crime, and proof of doing either will warrant a verdict of guilty.

2. A defendant indicted with another for receiving, concealing, and aiding in the concealing, of stolen property, may be found guilty thereon of a separate receiving. etc., when such other defendant has been discharged therefrom upon a plea of autrefois convict.

3. What constitutes a guilty receiving, concealing. and aiding in the concealing, of stolen property under section 5479 aforesaid.

4. The possession of gold coin received at the mint in exchange for gold dust stolen from the mails, is not a possession of such dust.

5. The receiving, etc., of the stolen property must have been done in the district where the indictment is found.

6. A defendant, however degraded or abandoned, is nevertheless presumed to be innocent of the crime charged in the indictment.

7. Witnesses—Circumstances affecting the credibility of.

8. Confessions—What weight to be given to.

[Cited in U. S. v. Reeves, 38 Fed. 410.]

[This was an indictment against Sarah Jane Montgomery for receiving property from Andrew J. Harmison, which he had stolen from the United States mail.]

Rufus Mallory and Joseph N. Dolph, for plaintiff.

William H. Effinger, Richard Williams, and James D. Fay, for defendant.

DEADY, District Judge, (charging jury). The indictment in this case is founded upon section 5470 of the Revised Statutes, which, among other things, provides that any person who shall receive, or conceal, or aid in concealing, any article of value, knowing the same to have been stolen or embezzled from the mail of the United States, shall be punishable by a fine of not more than $2,000, and by imprisonment at hard labor not more than five years.

The reason and necessity of such a statute

[1] [Reported by L. S. B. Sawyer, Esq., and here reprinted by permission.]

is apparent. The post-office is one of the principal departments of the government. Upon the security and celerity with which the mails are carried and delivered throughout the country depend to a great extent the preservation of the business and social relations of the people. Upon the long-established maxim that "a receiver is as bad as a thief," the statute has also provided for the punishment of persons who assist others in stealing or embezzling from the mails by receiving the stolen property, or concealing it, or aiding in concealing it, substantially in the same manner as the thief himself.

By this indictment the defendant is accused in different modes or counts, of receiving, concealing, and aiding in the concealing, of three cans of gold dust, of the aggregate value of $1,830, the same having been stolen from the mails of the United States, to the knowledge of the defendant, in October, 1874, near Canyonville. But these seventeen counts only charge one crime, that of receiving, concealing, and aiding in the concealing, of the stolen dust, under the circumstances stated, and the proof of receiving, concealing, or aiding in concealing, is sufficient to establish the guilt of the defendant. To this indictment the defendant has pleaded not guilty, and the effect of this plea is to put in issue or controvert all the material allegations of the indictment. This being so, the burden of proof is upon the United States, to prove to your satisfaction each of such allegations, before it can ask a verdict of guilty at your hands.

The defendant stands before you as a person charged with the commission of a grave crime, and the fact that she is also a woman and a mother does not change the rules of law or the duties of jurors in such cases. In determining the question of her guilt or innocence, you are not to be swerved by any sympathy for her sex or condition, but you are to say truly whether she is guilty or not as charged, irrespective of such considerations or the consequences to her or others that may follow your verdict. Of course, the fact that the defendant is a woman may be more or less material in judging of her conduct and motives in fleeing the country as she did with Harmison, the party who appears to have stolen this dust and had it in his possession. In considering their relations and intimacy, upon the question of whether this stolen dust was received or concealed by her, or her aid, you may properly consider the fact of the difference in their sex—that they were traveling and cohabiting together as man and wife, with trunks and other traveling gear in common. The indictment charges that the defendant and Harmison both committed this crime, without alleging whether it was done jointly or severally, and counsel for defendant now insists that neither party can be found guilty of a separate receiving under such a charge. Waiving the consideration of that precise question, as not being material to the present aspect of the case,

the fact being that Harmison has been discharged from this indictment upon his plea of autrefois convict, the defendant is now being tried upon it alone, and may be found guilty under it of committing the crime therein charged, separately.

Before the defendant can be found guilty of the charge in the indictment the United States must show that the gold dust in question was stolen or embezzled from its mails. The record of Harmison's conviction in this court of the crime of stealing three similar cans of gold dust from the mails, has been introduced in evidence. This is sufficient evidence of the fact until the contrary appears, it being also shown or proven to your satisfaction that the property mentioned in the two indictments is the same. It must also be shown that the defendant, knowing it to have been so stolen or embezzled, received it from the thief, or concealed, or aided the thief or some one else in concealing it. To constitute a guilty receiving of stolen property by the defendant, it must appear that she voluntarily took it into her control and possession, or voluntarily had it in her possession and control, with intent to prevent the larceny or the thief from being discovered, or the property from being reclaimed by the true owner or for his benefit; but it need not appear that she received it with intent to make any gain or profit thereby to herself.

A guilty concealing also implies that the defendant voluntarily secreted this dust, or put it out of the way, or in some manner disposed of it with a like intent as in the case of receiving. To aid in concealing stolen property a party must do some act with intent to assist the thief or other person, then in the guilty possession of the property, in concealing it, or furtively disposing of it, with a like intent as in the case of receiving. The possession of property by the defendant for which the stolen gold dust was exchanged—as for instance, gold coin for which it may have been exchanged by Harmison at the Philadelphia mint—will not support the charge in the indictment. The possession of such coin would not be the possession of the stolen property, and would not of itself tend to prove the defendant guilty of the charge in the indictment. But if the stolen dust was made into coin this circumstance would not change its identity and the possession of such coin would be the possession of the stolen property.

But this cannot be a material question in this case because it is admitted that if this dust was changed into or for coin by Harmison, it was done at the Philadelphia mint. Now the defendant cannot be convicted of the crime charged in the indictment upon proof of receiving, concealing, or aiding in concealing, this dust or the coin into which it may have been changed beyond this district—without the state of Oregon. Evidence has been given to you in regard to the conduct and declarations of Harmison and the defendant be-

yond this district, during their journey to Texas and back again, but only for the purpose of throwing light upon their acts and conduct while in this district. It being incumbent on the United States to show that this dust was stolen from the mails, instead of introducing the record of Harmison's conviction of the theft, in the first instance, the prosecution saw proper, as it had the right to do, to go into the original proof of the fact. In so doing the acts and declarations of Harmison, both within and without this state, tending to prove that the larceny was committed by him, have been given to you. But you are to remember that this evidence was only received for the purpose of proving the theft of the property, and that the defendant is not to be affected by the acts or declarations of Harmison, only so far as it appears the former were known to her or the latter were made to her, or in her presence and assented to by her.

Although you should find that the defendant knew from Harmison, or otherwise, that this dust had been stolen from the mails, that itself is not sufficient to convict her of the crime charged. And, in this connection, it may be material for you to consider the sex of the defendant for the purpose of determining whether her flight, and subsequent association with Harmison, was as his accomplice in the crime or his paramour. Proof that the defendant fled the country with the thief as his wife is not sufficient to sustain the charge in the indictment. A woman who deserts her husband and flees the country with another man who has committed larceny, ought not to complain if a jury finds her guilty of receiving, or aiding in concealing, the property stolen by her paramour, upon circumstances which would be deemed insufficient in the case of an honest woman. But you are not to convict the defendant of the crime charged in the indictment because she appears to have been guilty of the crime of adultery. The defendant's illicit relation with Harmison may have afforded her favorable opportunities, and offered strong temptations, to assist him in concealing the fruits of his crime, but it is not sufficient of itself to establish the fact that she did so assist him. But whatever her conduct or condition, the law presumes that the defendant is innocent of the crime charged against her until the contrary is proven beyond a reasonable doubt. In this respect, and so far as the crime charged in the indictment is concerned, she stands before the law as the peer of any woman, however virtuous or honorable. This presumption of innocence is the shield which the law interposes between her and her accusers, and it cannot be thrust aside or beaten down except by the force of evidence which shall satisfy your minds beyond a reasonable doubt, of her guilt.

A reasonable doubt is a substantial one—not a mere whim, caprice or speculation. It arises out of the case, from some defect or insufficiency in the evidence which makes a juror hesitate and feel that he is not satisfied. Mathematical certainty is not attainable in criminal trials. If you are morally certain of the defendant's guilt you should say so by your verdict, but unless you are, however you may suspect it, you must say not guilty. You are the judges of the credibility of the witnesses and the weight to be given to their testimony.

The evidence of Cardwell tending to show that the defendant attempted to suborn him to swear falsely on the trial of Harmison was admitted without objection, but it is my duty to say to you that it is not relevant or competent proof of the crime charged in this indictment. It may tend to show that the defendant was willing to run any risk, or even commit a crime, to save her paramour from conviction and punishment, but it does not prove that she committed the crime for which she is on trial. Montgomery, the late husband of the defendant, is contradicted by several witnesses and by the reporter's notes of his testimony on Harmison's trial. Besides, it appears from his own evidence that he knew of the theft soon after it was committed, in October, 1874, and had had the gold dust in his buggy and in his house without disclosing the fact. Besides, Cardwell, a witness called by the prosecution, testifies that Montgomery saw him at Canyonville, about the time the warrants were sworn out for Harmison and the defendant, and urged upon him the necessity of their—that is, Montgomery and Cardwell making up a good story about the robbery, and sending Harmison and the defendant "up." Upon this trial he testified that when Harmison left this dust for him at the tollhouse the defendant said he was foolish not to take it, when he spoke of their little child, and said it would ruin them. Upon cross-examination he stated that he testified to this conversation on Harmison's trial, but it appears from the reporter's notes that he did not. The witness was the husband of the defendant, and she deserted him for Harmison. He may entertain unkind feelings towards her on this account, and he may desire, as he said to Cardwell, according to the latter's testimony, to "send her up." All these circumstances go to affect the credibility of this witness. What weight shall be given to his testimony you must judge, always remembering that a witness who is intentionally false in a material part of his testimony ought to be at least distrusted, as to the rest of it.

The postal agent, Mr. Underwood, who acted as deputy marshal in pursuing and arresting Harmison and the defendant at Seguin, Texas, and bringing them here for trial, testifies to conversations and confessions of the defendant all along the route from there here. This kind of testimony should be received with caution. The witness testified in a very indefinite manner as to the time and place of these conversations—giving them apparently in his own language and not always in

the same words. After being on the stand one afternoon, and apparently going over the whole subject, he came back the next morning and testified to important conversations with the defendant in Texas, and between there and St. Louis, which he had not stated the day before, or apparently remembered. Besides, in stating a material part of a particular conversation, he first said she used the word "they," and afterwards said she used "we"—a change which makes a material difference in the sense and effect of the admission. I make these suggestions not by way of calling in question or casting doubts upon the integrity of the witness, but that his testimony may be received with due caution. Apparently this prosecution was set on foot by him, and he has since been earnestly engaged in the arrest of Harmison and the defendant and the pursuit of evidence to secure their conviction, and he is liable to be unconsciously influenced by his zeal in the premises and the very natural desire of success in what he has undertaken.

Upon the subject of verbal confessions, I read to you as a part of my charge, from 1 Greenl. Ev. §§ 214, 215, as follows: "The evidence of verbal confessions of guilt is to be received with great caution. For, besides the danger of mistake, from the misapprehension of witnesses, the misuse of words, the failure of the party to express his own meaning, and the infirmity of memory, it should be recollected, that the mind of the prisoner himself is oppressed by the calamity of the situation, and that he is often influenced by motives of hope or fear to make an untrue confession. The zeal, too, which so generally prevails, to detect offenders, especially in cases of aggravated guilt, and the strong disposition, in the persons engaged in the pursuit of evidence to rely on slight grounds of suspicion, which are exaggerated into sufficient proof, together with the character of the persons necessarily called as witnesses, in cases of secret and atrocious crime, all tend to impair the value of this kind of evidence, and sometimes lead to its rejection, when, in civil actions, it would have been received. The weighty observation of Mr. Justice Foster is also to be kept in mind, that this evidence is not, in the ordinary course of things, to be disproved by that sort of negative evidence, by which the proof of plain facts may be, and often is confronted."

Subject to these cautions in receiving them and weighing them, it is generally agreed that deliberate confessions of guilt are among the most effectual proofs in the law. Their value depends on the supposition that they are deliberate and voluntary, and on the presumption that a rational being will not make admissions prejudicial to his interest and safety, unless when urged by the promptings of truth and conscience. Such confessions, so made by a prisoner, to any person, at any moment of time, and at any place subsequent to the perpetration of the crime, and previous to his examination before the magistrate, are at common law received in evidence, as among proofs of guilt. The only direct evidence in the case which brings this defendant into what might be considered possession of this dust, in Oregon, is that of Montgomery, concerning the dust being left at the toll-house, near Canyonville, where he and she lived in the spring of 1875. According to his account, he came home one day, and found his wife, the defendant, lying on the lounge in the front room, when she laughed and said: "Dan Smith (Harmison) has been here and left you a present." He asked what it was, and she replied by rising up and leading him into the back room, and pointing him to a sack in the potato-box. He put his hand into the sack, felt the cans of dust, and drew one of them in sight, when he said: "It is that d—d infernal dust! Give it back to him, and have nothing to do with it." The defendant urged him to keep the dust; but he declined, saying it would be the ruin of them, when she promised to return it, and Montgomery never saw it afterwards. Upon this evidence, assuming it to be true, I do not think, as a matter of law, that the defendant was then and there guilty of the crime charged in the indictment. A package is brought to the house and left with her for her husband, which she delivered to him, and he refuses to accept it, and directs her to return it to the person who brought it, which she does. This alone does not make her guilty of receiving, concealing, or aiding in the concealing, of stolen property, even if we assume, as is probable, that she knew these cans of dust had been stolen from the mails. And although it was wrong to advise her husband to take it (if she did), yet she did not hereby commit the crime with which she is charged.

Gentlemen of the jury: The case is now submitted to you to say upon your oaths, under the law and evidence given you in court, whether the defendant is guilty or not. Take the law so given you and apply it to the facts, as you may find them from the evidence, and make up your verdict accordingly.

The jury, after an absence of half an hour, returned into court and gave a verdict of "Not guilty," and the defendant was discharged.